## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| ADRIA HUSETH,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>NATIONAL PORK BOARD, WILLIAM EVEN, and JARROD SUTTON,<br><br>　　　　　Defendants. | CASE NO. 21—90<br><br>Removed from the Iowa District Court in and for Polk County, No. LACL149661<br><br>**LOCAL RULE 81(a) REMOVAL INFORMATION FORM** |

Defendants, National Pork Board, William Even, and Jarrod Sutton, hereby submit the information required by Local Rule 81(a) in connection with its removal of this case to federal court:

1.　　　All process, pleadings, and orders filed in the state court proceeding are attached hereto.  These materials include:

- **Original Notice & Petition**
- **Amended Petition**
- **Acceptance of Service**
- **Appearance on Behalf of Defendants**
- **Return of Service – Diligent search (Even)**
- **Return of Service – (Sutton)**

2.　　　There are no known motion pending before the Iowa District Court that will require resolution by this Court.

3.　　　The following attorneys for Plaintiff have appeared in the state court action:

Laura Schultes (lschultes@fightingforfairness.com)
Thomas Foley (tfoley@fightingforfairness.com)
RSH Legal
425 2nd St. SE, Suite 1140
Cedar Rapids, IA 52401
(319) 365–9200
(319) 365–1114

4.      The following attorneys for Defendants have appeared in the state court action:

Lindsay A. Vaught (AT0010517)
Emily A. Kolbe (AT0012313)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309
(515) 243–7611
(515) 243–2149 (fax)
lvaught@ahlerslaw.com
ekolbe@ahlerslaw.com

Lindsay A. Vaught (AT0010517)
Emily A. Kolbe (AT0012313)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309–2231
(515) 243–7611
(515) 243–2149 (fax)
lvaught@ahlerslaw.com
ekolbe@ahlerslaw.com
ATTORNEYS FOR DEFENDANTS

**Electronically filed and served.**

Laura Schultes
Tom Foley
RSH LEGAL
425 Second Street SE, Suite 1140
Cedar Rapids, Iowa 52401
(319) 365–9200
(319) 365–1114 (fax)
lschultes@fightingforfairness.com
tfoley@fightingforfairness.com
ATTORNEYS FOR PLAINTIFF

01852123–1\23711–001

| CERTIFICATE OF SERVICE | | | |
|---|---|---|---|
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on:   *March 22, 2021* | | | |
| By: ☐ U.S. Mail | | ☐ Fax | |
| ☐ Hand delivery | | ☐ Private Carrier | |
| ☒ Electronically (*via EDMS*) | | ☐ E-mail | |
| Signature:   *Kimberly Wulff* | | | |

2

# State Court Filings

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY IOWA

| | |
|---|---|
| ADRIA PLAINTIFF,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONAL PORK BOARD; WILLIAM EVEN; and JARROD SUTTON,<br><br>    Defendants, | LAW NO.  LACL149661<br><br><br>**PETITION AND JURY DEMAND** |

Plaintiff Adria Plaintiff, in support of her Petition and Jury Demand against Defendants NATIONAL PORK BOARD ("NPB"); WILLIAM EVEN; and JARROD SUTTON ("Sutton"), states as follows:

### INTRODUCTION

1.    Plaintiff brings this against Defendants NPB, Even, and Sutton for discriminating against her because of her sex and for retaliating against Plaintiff for refusing to continue a once-consensual relationship with Sutton.

### PROCEDURAL REQUIREMENTS

2.    Plaintiff timely filed a complaint with the Iowa Civil Rights Commission ("ICRC").

3.    The ICRC issued an administrative release/right-to-sue letter on October 23, 2020.

4.    Plaintiff filed this lawsuit within 90 days of receiving the administrative release mentioned above and otherwise exhausted all administrative remedies she was required to exhaust.

### PARTIES

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

5.      Plaintiff is a resident of Urbandale, Polk County, Iowa.

6.      NPB is an Iowa nonprofit corporation with its headquarters in Clive, Polk County, Iowa.

7.      Even is the Chief Executive Officer of NPB and a resident of Adel, Dallas County, Iowa.

8.      Sutton is an employee of NPB and a resident of Norwalk, Warren County, Iowa.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter as the value exceeds the small claims jurisdictional amount.

10.     Venue is appropriate because NPB has its principal place of business and the discriminatory acts of which Plaintiff complains took place in Polk County, Iowa.

## FACTUAL BACKGROUND

### Plaintiff's Initial Employment

11.     Plaintiff began working for NPB on January 21, 2010.

12.     Plaintiff's initial job title was Manager of Nutrition Research and Communication and she was responsible for managing NPB's marketing and research efforts pertaining to nutrition.

13.     When she was hired, Plaintiff was part of NPB's Marketing Department and reported to Cecelia Snyder.

### Sutton's Initial Overtures

14.     Approximately one year after she began working for NPB, Sutton, then a fellow employee, walked into Plaintiff's office, closed the door, pulled Plaintiff close to him, kissed her, and then said, "I just had to do that."

2

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

15.     Even though Sutton's sexually aggressive conduct shocked and confused her, Plaintiff did not report the incident because she hoped it was an isolated indiscretion and would not happen again.

### The March 2011 Forum Meeting

16.     In March 2011, Plaintiff attended NPB's "Forum" meeting. During that meeting, various pork producers directed random sexual overtures toward Plaintiff which Plaintiff ignored.

17.     Misconduct of this nature continued at various conferences and events throughout Plaintiff's employment with NPB.

18.     When she complained to management, Plaintiff was told to ignore the behavior. NPB's management dismissed Plaintiff's complaints and made comments to the effect that NPB's producers did not get off their farms much and that they did not know how to behave in professional settings.

19.     During the March 2011 Forum meeting, Sutton texted Plaintiff to come to his room.  Plaintiff ignored Sutton's initial texts and then outright declined his invitation to come to his room.

20.     Undeterred, Sutton showed up at Plaintiff's room and they had sex together.

### Plaintiff and Sutton's Initial Relationship

21.     Plaintiff and Sutton maintained a sexual relationship that waxed and waned throughout the remainder of 2011.

22.     Plaintiff did not report her relationship with Sutton to NPB management because she did not report directly to Sutton and she considered the relationship to be both consensual and private.

3

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

23.     Plaintiff sees now that Sutton took advantage of her youth and inexperience and that Sutton used his position to both start and perpetuate the relationship.

24.     In late December 2011, Sutton gave Plaintiff a card stating that he was excited about the future and that he hoped his future included her.

25.     A couple of weeks later, Sutton, apparently having second thoughts, did his best to avoid Plaintiff.

**26.**     Sutton's affections toward Plaintiff ran hot and cold throughout 2011 and the first half of 2012.  Sutton seemed to be toying with Plaintiff's emotions which was very stressful and confusing.

### Plaintiff Rejects Sutton; NPB Divides Its Marketing Department

27.     In July and August 2012, Sutton decided to rekindle their relationship and started making advances toward Plaintiff during work hours.

28.     Among other things, Sutton asked Plaintiff on dates and to go with him on his friend's boat.  Plaintiff ignored Sutton's overtures because she was dating her now husband.

29.     Sutton was persistent and even went so far as to send Plaintiff a text that read, "Let's get married, you can quit your job and we'll have lots of babies."

30.     Sutton's overtures continued and eventually he confronted Plaintiff in her office. While there, Sutton said that he wanted Plaintiff and that he was ready for a relationship.  He added that he always got what he wanted.

31.     Plaintiff told Sutton in no uncertain terms that she was in a relationship and that she was no longer interested in dating him.  Plaintiff told Sutton to "move on," and she encouraged him to find someone else.

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

32.     Although she tried to let him down lightly, Sutton became noticeably upset when Plaintiff made it clear that she did not want to rekindle their relationship.  Sutton left Plaintiff's office in a huff, his attitude toward Plaintiff forever altered.

33.     Shortly after the confrontation described in the preceding paragraph, NPB divided its Marketing Department into two groups.

34.     The division of NPB's Marketing Department, while making little sense from a business perspective, coincidentally limited Plaintiff's contact with Sutton which was a relief to Plaintiff.

### NPB recombines its Science Department, Promotes Sutton, and Transfers Plaintiff

35.     In September 2016, NPB recombined its Marketing Department and inexplicably selected Sutton to head the newly consolidated group.

36.     NPB promoted Sutton to Vice President of Marketing.  He was selected for that position over Cecilia Snyder, a female employee, even though Snyder was far more experienced and significantly more qualified for the job than Sutton was.

37.     Sutton had been in sales his entire career and had no marketing experience. Sutton had (and has) a high school diploma only and no degrees and was largely disliked and distrusted.

38.     After Sutton was promoted, NPB removed Plaintiff from the Marketing Department and her assigned to its Science Department.

39.     No one at NPB ever told Plaintiff why she was ousted from the Marketing Department and the move made little, if any, sense from an organizational standpoint.

40.     Even though she was assigned to a different department, Plaintiff's job title remained the same and her duties and responsibilities continued to center on NPB's marketing efforts.

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

41.     Plaintiff was the only employee NPB moved from its Marketing Department to its Science Department and the move appeared designed to limit Sutton's contacts with Plaintiff.

**Plaintiff Remains in Science Department But is Not Named a Director**

42.     Dave Pyburn, the head of NPB's Science Department, tried his best to supervise Plaintiff, but he had no marketing background and was unable to provide Plaintiff with any guidance or to effectively evaluate Plaintiff's work performance.

43.     With the exception of Plaintiff and one other individual, during the next three years, NPB terminated the employment of several individuals on Snyder's former team, and marginalized the others so that they left NPB on their own accord.

44.     Despite those departures, Plaintiff continued to work hard and to obtain positive results.  Plaintiff also continued to receive positive performance ratings and to earn the high merit increases and bonuses.

45.     Throughout her employment, Plaintiff repeatedly asked to be promoted to the Director level, but NPB either ignored or denied her promotion requests.

46.     At the same time it denied Plaintiff's requests to be named a Director, NPB promoted male employees who contributed less than Plaintiff did with fewer obstacles.

**The Newly Created Director of Nutrition Position**

47.     On January 13, 2020, Pyburn met with Plaintiff and told her that NPB had decided to eliminate the Science Department as part of an overall reorganization, and that Plaintiff was being reassigned to the newly created Strategy and Innovation Department.

48.     During this January 13, 2020 meeting, Pyburn told Plaintiff that NPB was promoting Sutton to Senior Vice President and that Sutton would lead the newly created Strategy and Innovation Department.  Pyburn said Plaintiff's title was being changed to Manager of

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

Nutrition Communication and that she would report to the Director of Nutrition—a newly created position for which Plaintiff was free to apply.

49.     Shortly after the January 13, 2020, meeting between Plaintiff and Pyburn, Sutton met with Plaintiff and confirmed the changes Pyburn previously described.  Sutton told Plaintiff, as Pyburn previously had, that Plaintiff could apply for the newly created Director of Nutrition position.

50.     During this same meeting, Sutton also asked Plaintiff if she even wanted to continue working for NPB, which was strange because Plaintiff had not previously expressed any intent to resign her employment.

51.     During this same meeting, Sutton hemmed and hawed when Plaintiff asked him to describe what she would be doing as Manager of Nutrition Communication.  Sutton was equally evasive when Plaintiff asked what the duties and responsibilities of the newly created Director of Nutrition were going to be.

52.     Sutton promised to provide Plaintiff with descriptions for each job, but he never did.

**Sutton Fires Plaintiff**

53.     Plaintiff was in Budapest on a business trip from January 16 through January 22, 2020.  Plaintiff had no significant contact with Sutton while she was in Budapest.

54.     While Plaintiff was out of the office, Sutton held planning and strategy meetings regarding NPB's nutrition marketing efforts.

55.     The Monday after Plaintiff returned from Budapest, Sutton called her into a conference room and proceeded to berate and demean her for two hours.

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

56.     During that meeting, Sutton was hostile and dismissive toward Plaintiff, and it became increasingly clear that Sutton's objective was to give Plaintiff no alternative other than to resign.

57.     Among other things, Sutton told Plaintiff that no one at NPB respected her or wanted her to remain.

58.     Sutton falsely stated that Pyburn said employees in the former Science Department did not want to work with Plaintiff.

59.     Contradicting their prior assertions, Sutton said Plaintiff would not be considered for the Director of Nutrition position.

60.     Sutton inexplicably criticized Plaintiff's work attitude and, for the first time, mentioned her potential departure from NPB.

61.     Sutton told Plaintiff that she needed to start "showing up with a smile on my face" or to come up with an "exit plan."

62.     Plaintiff had no idea to what Sutton was referring since no one at NPB had ever criticized Plaintiff's work attitude or said anything about her leaving the organization.

63.     Plaintiff asked Sutton to get me the job descriptions she previously requested. Sutton replied that he would get Plaintiff the job descriptions "or an exit plan."

64.     Sutton was out of the office on a business trip the entire next week and did not communicate further with Plaintiff about her employment status except to schedule a meeting for the first thing the following Monday morning.

65.     Sutton's business trip related to NPB's nutrition efforts. Sutton, however, never told Plaintiff about the trip, much less invited her to go on the trip.

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

66.     On February 10, 2020, Plaintiff met with Sutton and a representative from NPB's human resources department.

67.     During this meeting, Sutton told Plaintiff that the Manager of Nutrition Communication job had been eliminated, and the human resources representative provided Plaintiff with a proposed severance agreement.

68.     NPB did not tell Plaintiff why her job was eliminated.

## COUNT I
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT,
## IOWA CODE CHAPTER 216;
## TERMINATION OF EMPLOYMENTS BECAUSE OF SEX

69.     Plaintiff incorporates, by this reference, paragraphs 1 through 67 as though fully alleged herein.

70.     Defendants terminated Plaintiff's employment because of her sex in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

71.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, and emotional distress, and she requests damages as set forth below.

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT,
## IOWA CODE CHAPTER 216;
## FAILURE TO PROMOTION BECAUSE OF SEX

72.     Plaintiff incorporates, by this reference, paragraphs 1 through 70 as though fully alleged herein.

73.     During Plaintiff's tenure in the Science Department, she repeatedly requested to be promoted to a Director-level position within the Department.

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

74.     Defendants failed to promote Plaintiff to a Director-level position within the Science Department because of her sex in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

75.     Defendants also failed to promote Plaintiff to the Director of Nutrition position because of her sex in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

76.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, and emotional distress, and she requests damages as set forth below.

## COUNT II
## VIOLATION OF THE IOWA CIVIL RIGHTS ACT,
## IOWA CODE CHAPTER 216;
## RETALIATION FOR OPPOSING SEXUAL HARASSMENT

77.     Plaintiff incorporates, by this reference, paragraphs 1 through 75 as though fully alleged herein.

78.     Sutton sexually harassed Plaintiff by pursuing a non-consensual sexual relationship with her.

79.     Plaintiff rejected Sutton's sexual overtures, opposing sexual harassment in the workplace.

80.     Sutton and NPB retaliated against Plaintiff by denying her a promotion and terminating her employment in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

81.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, and emotional distress, and she requests damages as set forth below.

## RELIEF SOUGHT

10

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

**WHEREFORE**, Plaintiff requests judgment be entered in her favor and requests that the

Court order the following relief:

    A.  Declare Defendants' conduct to be in violation of the laws set forth herein;

    B.  Make Plaintiff whole by providing her with appropriate lost earnings and benefits, with interest;

    C.  Reinstate Plaintiff to their former employment with Defendant NPB or award front pay in lieu of reinstatement;

    D.  Upon reinstatement, if appropriate, require Defendants to give Plaintiff the Director of Nutrition position, or to require Defendants to pay Plaintiff the salary and benefits paid to the holder of the Director of Nutrition position;

    E.  Award Plaintiff damages sufficient to compensate her for the pain, humiliation, and other emotional distress she has endured as a proximate result of Defendants' conduct;

    F.  Award Plaintiff an amount sufficient to fully reimburse her for the reasonable attorneys' fees, expenses, and costs she has incurred, and will continue to incur, pursuing the claims asserted herein;

    G.  Award pre-judgment interest and costs against Defendants as allowed by law; and

    H.  Award such further relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues raised herein.

Respectfully submitted,


*/s/ Laura Schultes*
Laura Schultes
lschultes@fightingforfairness.com

*/s/ Thomas Foley*
Thomas Foley AT0002589
tfoley@fightingforfairness.com

**RSH LEGAL**
425 2nd St SE, Suite 1140
Cedar Rapids, IA 52401
Phone: (319) 365-9200

11

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

Fax: (319) 365-1114
ATTORNEYS FOR PLAINTIFF

Original filed.

E-FILED  2021 JAN 20 4:59 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ADRIA HUSETH,<br><br>    Plaintiff,<br><br>vs.<br><br>NATIONAL PORK BOARD; WILLIAM EVEN; and JARROD SUTTON,,<br><br>    Defendant | LAW NO. LACL149661<br><br>**ORIGINAL NOTICE** |

TO THE ABOVE NAMED DEFENDANTS:

You are hereby notified that there is now on file in the office of the clerk of the above court a petition in the above-entitled action, a copy of which petition is attached hereto.  THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.  Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption for the court, you must file your Appearance and Answer electronically.  You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM: http://www.iowacourts.state.ia.us/Efile

FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURTS RULES CHAPTER 16: http://www.iowacourts.state.ia.us/Efile

The Plaintiff's attorneys are Laura Schultes and Thomas Foley whose address is Suite 1140, 425 Second Street SE, Cedar Rapids, Iowa, 52401 (319) 365-9200.

You are further notified that unless, within 20 days after service of this original notice upon you, you serve, and within a reasonable time thereafter e-file a motion or answer, in the Iowa District Court for Polk Count, at the courthouse in Des Moines, IA, judgment by default will be rendered against you for the relief demanded in the petition.

If you need assistance to participate in court due to a disability, call the disability coordinator at 515-286-3394 and ask for Christopher Patterson or email christopher.patterson@iowacourts.gov.

Persons who are hearing or speech impaired may call Relay Iowa TTY (1-800-735-2942).  Disability coordinators cannot provide legal advice.

(SEAL)

_____
CLERK OF THE ABOVE COURT
Polk County Courthouse
Des Moines, IA 50319-0201

NOTE:  The attorney who is expected to represent the defendant should be promptly advised by defendants of the service of this notice.

E-FILED  2021 JAN 21 2:50 PM POLK - CLERK OF DISTRICT COURT

# STATE OF IOWA JUDICIARY

*Case No.*  LACL149661

*County*  Polk

*Case Title*  ADRIA HUSETH VS NATIONAL PORK BOARD ET AL

**THIS CASE HAS BEEN FILED IN A COUNTY THAT USES ELECTRONIC FILING.**
Therefore, unless the attached Petition and Original Notice contains a hearing date for your appearance, or unless you obtain an exemption from the court, you must file your Appearance and Answer electronically.

You must register through the Iowa Judicial Branch website at http://www.iowacourts.state.ia.us/Efile and obtain a log in and password for the purposes of filing and viewing documents on your case and of receiving service and notices from the court.

**FOR GENERAL RULES AND INFORMATION ON ELECTRONIC FILING, REFER TO THE IOWA COURT RULES CHAPTER 16 PERTAINING TO THE USE OF THE ELECTRONIC DOCUMENT MANAGEMENT SYSTEM:**
http://www.iowacourts.state.ia.us/Efile

**FOR COURT RULES ON PROTECTION OF PERSONAL PRIVACY IN COURT FILINGS, REFER TO DIVISION VI OF IOWA COURT RULES CHAPTER 16:** http://www.iowacourts.state.ia.us/Efile

*Scheduled Hearing:*

If you require the assistance of auxiliary aids or services to participate in court because of a disability, immediately call your district ADA coordinator at **(515) 286-3394**   .  (If you are hearing impaired, call Relay Iowa TTY at **1-800-735-2942**.)

*Date Issued*  01/21/2021 02:50:40 PM



*District Clerk of*  Polk                    *County*

/s/ Jennifer Ewers

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY IOWA

| | |
|---|---|
| ADRIA HUSETH,<br><br>        Plaintiff,<br><br>vs.<br><br>NATIONAL PORK BOARD; WILLIAM EVEN; and JARROD SUTTON,<br><br>        Defendants, | LAW NO. LACL149661<br><br>**FIRST AMENDED<br>PETITION AND JURY DEMAND** |

Plaintiff Adria Plaintiff, in support of her Petition and Jury Demand against Defendants NATIONAL PORK BOARD ("NPB"); WILLIAM EVEN; and JARROD SUTTON ("Sutton"), states as follows:

### INTRODUCTION

1.      Plaintiff brings this against Defendants NPB, Even, and Sutton for discriminating against her because of her sex and for retaliating against Plaintiff for refusing to continue a once-consensual relationship with Sutton.

### PROCEDURAL REQUIREMENTS

2.      Plaintiff timely filed a complaint with the Iowa Civil Rights Commission ("ICRC").

3.      Plaintiff's ICRC complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").

4.      The ICRC issued an administrative release/right-to-sue letter on October 23, 2020.

5.      The EEOC issued an administrative release/right-to-sue letter on February 11, 2021.

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

6.      Plaintiff filed this lawsuit within 90 days of receiving the administrative releases from the ICRC and EEOC and otherwise exhausted all administrative remedies she was required to exhaust.

## PARTIES

7.      Plaintiff is a resident of Urbandale, Polk County, Iowa.

8.      NPB is an Iowa nonprofit corporation with its headquarters in Clive, Polk County, Iowa.

9.      Even is the Chief Executive Officer of NPB and a resident of Adel, Dallas County, Iowa.

10.     Sutton is an employee of NPB and a resident of Norwalk, Warren County, Iowa.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this matter as the value exceeds the small claims jurisdictional amount.

12.     Venue is appropriate because NPB has its principal place of business and the discriminatory acts of which Plaintiff complains took place in Polk County, Iowa.

## FACTUAL BACKGROUND

### Plaintiff's Initial Employment

13.     Plaintiff began working for NPB on January 21, 2010.

14.     Plaintiff's initial job title was Manager of Nutrition Research and Communication and she was responsible for managing NPB's marketing and research efforts pertaining to nutrition.

15.     When she was hired, Plaintiff was part of NPB's Marketing Department and reported to Cecelia Snyder.

2

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

**Sutton's Initial Overtures**

16.    Approximately one year after she began working for NPB, Sutton, then a fellow employee, walked into Plaintiff's office, closed the door, pulled Plaintiff close to him, kissed her, and then said, "I just had to do that."

17.    Even though Sutton's sexually aggressive conduct shocked and confused her, Plaintiff did not report the incident because she hoped it was an isolated indiscretion and would not happen again.

**The March 2011 Forum Meeting**

18.    In March 2011, Plaintiff attended NPB's "Forum" meeting. During that meeting, various pork producers directed random sexual overtures toward Plaintiff which Plaintiff ignored.

19.    Misconduct of this nature continued at various conferences and events throughout Plaintiff's employment with NPB.

20.    When she complained to management, Plaintiff was told to ignore the behavior. NPB's management dismissed Plaintiff's complaints and made comments to the effect that NPB's producers did not get off their farms much and that they did not know how to behave in professional settings.

21.    During the March 2011 Forum meeting, Sutton texted Plaintiff to come to his room. Plaintiff ignored Sutton's initial texts and then outright declined his invitation to come to his room.

22.    Undeterred, Sutton showed up at Plaintiff's room and they had sex together.

**Plaintiff and Sutton's Initial Relationship**

23.    Plaintiff and Sutton maintained a sexual relationship that waxed and waned throughout the remainder of 2011.

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

24.     Plaintiff did not report her relationship with Sutton to NPB management because she did not report directly to Sutton and she considered the relationship to be both consensual and private.

25.     Plaintiff sees now that Sutton took advantage of her youth and inexperience and that Sutton used his position to both start and perpetuate the relationship.

26.     In late December 2011, Sutton gave Plaintiff a card stating that he was excited about the future and that he hoped his future included her.

27.     A couple of weeks later, Sutton, apparently having second thoughts, did his best to avoid Plaintiff.

**28.**     Sutton's affections toward Plaintiff ran hot and cold throughout 2011 and the first half of 2012.  Sutton seemed to be toying with Plaintiff's emotions which was very stressful and confusing.

### Plaintiff Rejects Sutton; NPB Divides Its Marketing Department

29.     In July and August 2012, Sutton decided to rekindle their relationship and started making advances toward Plaintiff during work hours.

30.     Among other things, Sutton asked Plaintiff on dates and to go with him on his friend's boat.  Plaintiff ignored Sutton's overtures because she was dating her now husband.

31.     Sutton was persistent and even went so far as to send Plaintiff a text that read, "Let's get married, you can quit your job and we'll have lots of babies."

32.     Sutton's overtures continued and eventually he confronted Plaintiff in her office. While there, Sutton said that he wanted Plaintiff and that he was ready for a relationship.  He added that he always got what he wanted.

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

33.     Plaintiff told Sutton in no uncertain terms that she was in a relationship and that she was no longer interested in dating him.  Plaintiff told Sutton to "move on," and she encouraged him to find someone else.

34.     Although she tried to let him down lightly, Sutton became noticeably upset when Plaintiff made it clear that she did not want to rekindle their relationship.  Sutton left Plaintiff's office in a huff, his attitude toward Plaintiff forever altered.

35.     Shortly after the confrontation described in the preceding paragraph, NPB divided its Marketing Department into two groups.

36.     The division of NPB's Marketing Department, while making little sense from a business perspective, coincidentally limited Plaintiff's contact with Sutton which was a relief to Plaintiff.

**NPB recombines its Science Department, Promotes Sutton, and Transfers Plaintiff**

37.     In September 2016, NPB recombined its Marketing Department and inexplicably selected Sutton to head the newly consolidated group.

38.     NPB promoted Sutton to Vice President of Marketing.  He was selected for that position over Cecilia Snyder, a female employee, even though Snyder was far more experienced and significantly more qualified for the job than Sutton was.

39.     Sutton had been in sales his entire career and had no marketing experience. Sutton had (and has) a high school diploma only and no degrees and was largely disliked and distrusted.

40.     After Sutton was promoted, NPB removed Plaintiff from the Marketing Department and her assigned to its Science Department.

41.     No one at NPB ever told Plaintiff why she was ousted from the Marketing Department and the move made little, if any, sense from an organizational standpoint.

5

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

42.     Even though she was assigned to a different department, Plaintiff's job title remained the same and her duties and responsibilities continued to center on NPB's marketing efforts.

43.     Plaintiff was the only employee NPB moved from its Marketing Department to its Science Department and the move appeared designed to limit Sutton's contacts with Plaintiff.

**Plaintiff Remains in Science Department But is Not Named a Director**

44.     Dave Pyburn, the head of NPB's Science Department, tried his best to supervise Plaintiff, but he had no marketing background and was unable to provide Plaintiff with any guidance or to effectively evaluate Plaintiff's work performance.

45.     With the exception of Plaintiff and one other individual, during the next three years, NPB terminated the employment of several individuals on Snyder's former team, and marginalized the others so that they left NPB on their own accord.

46.     Despite those departures, Plaintiff continued to work hard and to obtain positive results.  Plaintiff also continued to receive positive performance ratings and to earn the high merit increases and bonuses.

47.     Throughout her employment, Plaintiff repeatedly asked to be promoted to the Director level, but NPB either ignored or denied her promotion requests.

48.     At the same time it denied Plaintiff's requests to be named a Director, NPB promoted male employees who contributed less than Plaintiff did with fewer obstacles.

**The Newly Created Director of Nutrition Position**

49.     On January 13, 2020, Pyburn met with Plaintiff and told her that NPB had decided to eliminate the Science Department as part of an overall reorganization, and that Plaintiff was being reassigned to the newly created Strategy and Innovation Department.

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

50.    During this January 13, 2020 meeting, Pyburn told Plaintiff that NPB was promoting Sutton to Senior Vice President and that Sutton would lead the newly created Strategy and Innovation Department.   Pyburn said Plaintiff's title was being changed to Manager of Nutrition Communication and that she would report to the Director of Nutrition—a newly created position for which Plaintiff was free to apply.

51.    Shortly after the January 13, 2020, meeting between Plaintiff and Pyburn, Sutton met with Plaintiff and confirmed the changes Pyburn previously described.  Sutton told Plaintiff, as Pyburn previously had, that Plaintiff could apply for the newly created Director of Nutrition position.

52.    During this same meeting, Sutton also asked Plaintiff if she even wanted to continue working for NPB, which was strange because Plaintiff had not previously expressed any intent to resign her employment.

53.    During this same meeting, Sutton hemmed and hawed when Plaintiff asked him to describe what she would be doing as Manager of Nutrition Communication.  Sutton was equally evasive when Plaintiff asked what the duties and responsibilities of the newly created Director of Nutrition were going to be.

54.    Sutton promised to provide Plaintiff with descriptions for each job, but he never did.

**Sutton Fires Plaintiff**

55.    Plaintiff was in Budapest on a business trip from January 16 through January 22, 2020.  Plaintiff had no significant contact with Sutton while she was in Budapest.

56.    While Plaintiff was out of the office, Sutton held planning and strategy meetings regarding NPB's nutrition marketing efforts.

7

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

57.     The Monday after Plaintiff returned from Budapest, Sutton called her into a conference room and proceeded to berate and demean her for two hours.

58.     During that meeting, Sutton was hostile and dismissive toward Plaintiff, and it became increasingly clear that Sutton's objective was to give Plaintiff no alternative other than to resign.

59.     Among other things, Sutton told Plaintiff that no one at NPB respected her or wanted her to remain.

60.     Sutton falsely stated that Pyburn said employees in the former Science Department did not want to work with Plaintiff.

61.     Contradicting their prior assertions, Sutton said Plaintiff would not be considered for the Director of Nutrition position.

62.     Sutton inexplicably criticized Plaintiff's work attitude and, for the first time, mentioned her potential departure from NPB.

63.     Sutton told Plaintiff that she needed to start "showing up with a smile on my face" or to come up with an "exit plan."

64.     Plaintiff had no idea to what Sutton was referring since no one at NPB had ever criticized Plaintiff's work attitude or said anything about her leaving the organization.

65.     Plaintiff asked Sutton to get me the job descriptions she previously requested. Sutton replied that he would get Plaintiff the job descriptions "or an exit plan."

66.     Sutton was out of the office on a business trip the entire next week and did not communicate further with Plaintiff about her employment status except to schedule a meeting for the first thing the following Monday morning.

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

67.     Sutton's business trip related to NPB's nutrition efforts. Sutton, however, never told Plaintiff about the trip, much less invited her to go on the trip.

68.     On February 10, 2020, Plaintiff met with Sutton and a representative from NPB's human resources department.

69.     During this meeting, Sutton told Plaintiff that the Manager of Nutrition Communication job had been eliminated, and the human resources representative provided Plaintiff with a proposed severance agreement.

70.     NPB did not tell Plaintiff why her job was eliminated.

**COUNT I**
**VIOLATION OF THE IOWA CIVIL RIGHTS ACT,**
**IOWA CODE CHAPTER 216;**
**TERMINATION OF EMPLOYMENTS BECAUSE OF SEX**
**(ALL DEFENDANTS)**

71.     Plaintiff incorporates, by this reference, paragraphs 1 through 70 as though fully alleged herein.

72.     Defendants terminated Plaintiff's employment because of her sex in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

73.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, emotional distress, and attorney fees. She requests damages as set forth below.

**COUNT II**
**VIOLATION OF THE IOWA CIVIL RIGHTS ACT,**
**IOWA CODE CHAPTER 216;**
**FAILURE TO PROMOTE BECAUSE OF SEX**
**(ALL DEFENDANTS)**

74.     Plaintiff incorporates, by this reference, paragraphs 1 through 73 as though fully alleged herein.

9

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

75.     During Plaintiff's tenure in the Science Department, she repeatedly requested to be promoted to a Director-level position within the Department.

76.     Defendants failed to promote Plaintiff to a Director-level position within the Science Department because of her sex in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

77.     Defendants also failed to promote Plaintiff to the Director of Nutrition position because of her sex in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

78.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, emotional distress, and attorney fees. She requests damages as set forth below.

**COUNT III
VIOLATION OF THE IOWA CIVIL RIGHTS ACT,
IOWA CODE CHAPTER 216;
RETALIATION FOR OPPOSING SEXUAL HARASSMENT
(ALL DEFENDANTS)**

79.     Plaintiff incorporates, by this reference, paragraphs 1 through 78 as though fully alleged herein.

80.     Sutton sexually harassed Plaintiff by pursuing a non-consensual sexual relationship with her.

81.     Plaintiff rejected Sutton's sexual overtures, opposing sexual harassment in the workplace.

82.     Defendants retaliated against Plaintiff by denying her a promotion and terminating her employment in violation of the Iowa Civil Rights Act, Iowa Code Chapter 216.

83.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, emotional distress, and attorney fees. She requests damages as set forth below.

10

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

**COUNT IV**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**TERMINATION OF EMPLOYMENTS BECAUSE OF SEX**
**(ALL DEFENDANTS)**

84.     Plaintiff incorporates, by this reference, paragraphs 1 through 83 as though fully alleged herein.

85.     Defendants terminated Plaintiff's employment because of her sex in violation of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq*.

86.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, emotional distress, and attorney fees. She requests damages as set forth below.

**COUNT V**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
**FAILURE TO PROMOTE BECAUE OF SEX**
**(ALL DEFENDANTS)**

87.     Plaintiff incorporates, by this reference, paragraphs 1 through 81 as though fully alleged herein.

88.     During Plaintiff's tenure in the Science Department, she repeatedly requested to be promoted to a Director-level position within the Department.

89.     Defendants failed to promote Plaintiff to a Director-level position within the Science Department because of her sex in violation of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq*.

90.     Defendants also failed to promote Plaintiff to the Director of Nutrition position because of her sex in violation of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq*.

91.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, emotional distress, and attorney fees. She requests damages as set forth below.

11

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

### COUNT VI
### VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### RETALIATION FOR OPPOSING SEXUAL HARASSMENT
### (ALL DEFENDANTS)

92.     Plaintiff incorporates, by this reference, paragraphs 1 through 91 as though fully alleged herein.

93.     Sutton sexually harassed Plaintiff by pursuing a non-consensual sexual relationship with her.

94.     Plaintiff rejected Sutton's sexual overtures, opposing sexual harassment in the workplace.

95.     Defendants retaliated against Plaintiff by denying her a promotion and terminating her employment in violation of the Civil Rights Act, 42 U.S.C. § 2000e *et. seq*.

96.     As a proximate result of Defendants' conduct, Plaintiff has suffered lost wages and benefits, lost earning capacity, and emotional distress, and she requests damages as set forth below.

### COUNT VII
### INTENTIONAL INTERFERENCE WITH CONTRACT / INTENTIONAL
### INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONSHIP
### (DEFENDANT SUTTON)

97.     Plaintiff incorporates, by this reference, paragraphs 1 through 96 as though fully alleged herein.

98.     Plaintiff had a contract of employment with Defendant NPB.

99.     Defendant Sutton knew of the contract.

100.    Defendant Sutton intentionally and improperly interfered with the contract.

101.    Defendant and Sutton intentionally and improperly interfered with the contract with the purpose to injure or financially destroy Plaintiff.

102.    The interference caused Plaintiff to not be able to perform the contract.

12

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

103.    As a result of Defendant Sutton's intentional interference, Plaintiff has suffered lost wages and benefits and she requests damages as set forth below.

## RELIEF SOUGHT

**WHEREFORE**, Plaintiff requests judgment be entered in her favor and requests that the Court order the following relief:

A.  Declare Defendants' conduct to be in violation of the laws set forth herein;

B.  Make Plaintiff whole by providing her with appropriate lost earnings and benefits, with interest;

C.  Reinstate Plaintiff to their former employment with Defendant NPB or award front pay in lieu of reinstatement;

D.  Upon reinstatement, if appropriate, require Defendants to give Plaintiff the Director of Nutrition position, or to require Defendants to pay Plaintiff the salary and benefits paid to the holder of the Director of Nutrition position;

E.  Award Plaintiff damages sufficient to compensate her for the pain, humiliation, and other emotional distress she has endured as a proximate result of Defendants' conduct;

F.  Award Plaintiff an amount sufficient to fully reimburse her for the reasonable attorneys' fees, expenses, and costs she has incurred, and will continue to incur, pursuing the claims asserted herein;

G.  Award Plaintiff punitive damages (Defendant Sutton only).

H.  Award pre-judgment interest and costs against Defendants as allowed by law; and

I.  Award such further relief as the Court deems necessary and proper.

## JURY DEMAND

Plaintiff demands a jury trial on all issues raised herein.

Respectfully submitted,


*/s/ Laura Schultes*
Laura Schultes
lschultes@fightingforfairness.com

13

E-FILED  2021 FEB 18 1:32 PM POLK - CLERK OF DISTRICT COURT

*/s/ Thomas Foley*
Thomas Foley AT0002589
tfoley@fightingforfairness.com

**RSH LEGAL**
425 2nd St SE, Suite 1140
Cedar Rapids, IA 52401
Phone: (319) 365-9200
Fax: (319) 365-1114
ATTORNEYS FOR PLAINTIFF

Original filed.

E-FILED  2021 MAR 08 2:24 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ADRIA HUSETH,<br><br>                 Plaintiff,<br><br>v.<br><br>NATIONAL PORK BOARD, WILLIAM<br>EVEN, and JARROD SUTTON,<br><br>                 Defendants. | Case No. LACL149661<br><br>**ACCEPTANCE OF SERVICE** |

I, Lindsay A. Vaught, hereby acknowledge receipt and accept service of the Original

Notice and Petition on behalf of Defendants National Pork Board ("NPB") and William Even

("Even").  This acknowledgement is taking place in Des Moines, Iowa on the 8th day of March,

2021.

Lindsay A. Vaught (AT0010517)
Emily A. Kolbe (AT0012313)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309–2231
(515) 243–7611
(515) 243–2149 (fax)
lvaught@ahlerslaw.com
ekolbe@ahlerslaw.com
ATTORNEYS FOR DEFENDANTS

**Electronically filed and served.**

Laura Schultes
Tom Foley
RSH LEGAL
425 Second Street SE, Suite 1140
Cedar Rapids, Iowa 52401
(319) 365–9200
(319) 365–1114 (fax)
lschultes@fightingforfairness.com
tfoley@fightingforfairness.com
ATTORNEYS FOR PLAINTIFF

| CERTIFICATE OF SERVICE | | | |
|---|---|---|---|
| The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on: *March 8, 2021* | | | |
| By: | ☐ U.S. Mail | ☐ | Fax |
| | ☐ Hand delivery | ☐ | Private Carrier |
| | ☒ Electronically (*via EDMS*) | ☐ | E–mail |
| Signature: *Kimberly Neff* | | | |

01843844-1\23711-001

E-FILED  2021 MAR 09 3:18 PM POLK - CLERK OF DISTRICT COURT

## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

| | |
|---|---|
| ADRIA HUSETH, | Case No. LACL149661 |
| Plaintiff, | |
| v. | **APPEARANCE ON BEHALF OF DEFENDANTS** |
| NATIONAL PORK BOARD, WILLIAM EVEN, and JARROD SUTTON, | |
| Defendants. | |

COME NOW, Lindsay A. Vaught and Emily A. Kolbe, of the law firm Ahlers & Cooney, P.C. and hereby enter their Appearance on behalf of Defendants National Pork Board ("NPB"), William Even ("Even"), and Jarrod Sutton ("Sutton") (combined "Defendants") in the above-entitled action.

Lindsay A. Vaught (AT0010517)
Emily A. Kolbe (AT0012313)
AHLERS & COONEY, P.C.
100 Court Avenue, Suite 600
Des Moines, Iowa 50309–2231
(515) 243–7611
(515) 243–2149 (fax)
lvaught@ahlerslaw.com
ekolbe@ahlerslaw.com
ATTORNEYS FOR DEFENDANTS

**Electronically filed and served.**

Laura Schultes
Tom Foley
RSH LEGAL
425 Second Street SE, Suite 1140
Cedar Rapids, Iowa 52401
(319) 365–9200
(319) 365–1114 (fax)
lschultes@fightingforfairness.com
tfoley@fightingforfairness.com
ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause to each of the attorneys of record herein at their respective addresses disclosed on the pleadings on: _March 9, 2021_

| By: | ☐ U.S. Mail | ☐ Fax |
|---|---|---|
| | ☐ Hand delivery | ☐ Private Carrier |
| | ☒ Electronically (*via EDMS*) | ☐ E–mail |

Signature: _Kimberly Nuss_

E-FILED  2021 MAR 16 9:48 AM POLK - CLERK OF DISTRICT COURT

## AFFIDAVIT OF NON-SERVICE

| Case: LACL149661 | Court: Polk County District Court | County: Polk, IA | Job: 5389855 |
|---|---|---|---|
| Plaintiff / Petitioner: Adria Huseth | | Defendant / Respondent: National Pork Board; William Even; Jarrod Sutton | |
| Received by: HSPS Legal Services | | For: RSH Legal | |
| To be served upon: William Even | | | |

I, Clay Wunder, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**   William Even, 1218 Prairie St, Adel, IA 50003

**Manner of Service:**   Non-Service

**Documents:**   Original Notice; First Amended Petition and Jury Demand; Petition and Jury Demand (Received Feb 24, 2021 at 9:18am CST)

**Additional Comments:**

1) Unsuccessful Attempt: Mar 2, 2021, 7:21 pm CST at 1218 Prairie St, Adel, IA 50003
No lights on inside property. No answer at door.

2) Unsuccessful Attempt: Mar 5, 2021, 7:14 pm CST at 1218 Prairie St, Adel, IA 50003
No answer at door.

3) Unsuccessful Attempt: Mar 8, 2021, 6:33 pm CST at 1218 Prairie St, Adel, IA 50003
Defendant or resident is home but refuses to answer the door with repeated knocking. Red Silverado and red Enclave in driveway.

4) Unsuccessful Attempt: Mar 9, 2021, 7:11 pm CST at 1218 Prairie St, Adel, IA 50003
Unable to reach using provided phone numbers.

5) Unsuccessful Attempt: Mar 9, 2021, 7:14 pm CST at 1218 Prairie St, Adel, IA 50003
No lights on in home. No answer at door.

6) Unsuccessful Attempt: Mar 13, 2021, 2:03 pm CST at 1218 Prairie St, Adel, IA 50003
No answer at door.

7) Unsuccessful Attempt: Mar 13, 2021, 9:48 pm CST at 1218 Prairie St, Adel, IA 50003
Unable to locate.

**Fees:** 55

State of:   Iowa   )

)  SS:

County of:   Polk   )

Clay Wunder

Date   3/15/21

Signed and sworn to before me, a notary public, on this 15 day of March 2021

Notary Public

My Commission Expires   07/23/2021

REGAN KLUG
Commission No. 811725
My Comm. Expires 07/23/2021

HSPS Legal Services
160 Southgate Ave Ste A
Iowa City, IA 52240
319-354-2010

### AFFIDAVIT OF SERVICE

| Case:<br>LACL149661 | Court:<br>Polk County District Court | County:<br>Polk, IA | Job:<br>5389852 |
|---|---|---|---|
| Plaintiff / Petitioner:<br>Adria Huseth | | Defendant / Respondent:<br>National Pork Board; William Even; Jarrod Sutton | |
| Received by:<br>HSPS Legal Services | | For:<br>RSH Legal | |
| To be served upon:<br>Jarrod Sutton | | | |

I, Desiree Childs, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  Ashley Sutton- wife of Jarrod Sutton, 1724 Bentley Ct, Norwalk, IA 50211

**Manner of Service:**  Substitute Service - Personal, Mar 2, 2021, 7:18 pm CST

**Documents:**  Original Notice; First Amended Petition and Jury Demand; Petition and Jury Demand (Received Feb 24, 2021 at 9:18am CST)

**Additional Comments:**

1) Successful Attempt: Mar 2, 2021, 7:18 pm CST at 1724 Bentley Ct, Norwalk, IA 50211 received by Ashley Sutton- wife of Jarrod Sutton. (Server's visual approximation) Age: 45; Ethnicity: Caucasian; Gender: Female; Weight: 130; Height: 5'4"; Hair: Brown; Eyes: Brown; Relationship: Wife;

Ashley verbally affirmed her identity and residence at the address with the defendant. Ashley stated her relationship as wife and accepted the legal documents described herein.

Fees: 00

State of: ___Iowa___ )

) SS:

County of: ___Polk___ )

Desiree Childs ___ Date 03-02-21

HSPS Legal Services
160 Southgate Ave Ste A
Iowa City, IA 52240
319-354-2010

Signed and sworn to before me, a notary public, on this ___2nd___ day of ___March___ , ___2021___

Notary Public

My Commission Expires ___3-7-2022___



NOTARIAL SEAL
DAVID MAXWELL
Commission Number 815694
My Commission Expires
March 7, 2022